JACOB S. CIBOROWSKI *vs.* WILLIAM J. KOSCIAK & others.

Worcester. October 28, 1941. — January 28, 1942.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Equity Jurisdiction*, Specific performance. *Equity Pleading and Practice*, Master: findings; Counterclaim; Decree; Waiver.

In a suit in equity to compel the defendant, who made no counterclaim on the subject, to perform a promise to convey real estate to the plaintiff for a certain sum which the plaintiff had paid or tendered, it was error to enter a decree ordering the plaintiff to pay the defendant an unpaid balance of such sum upon tender of a deed by the defendant; the decree should have ordered the defendant to execute and deliver a deed to the plaintiff upon receiving such balance from him.

The defendant in a suit in equity waived defects in the answer of the plaintiff to a counterclaim by proceeding to trial of the case without objecting to such answer.

It was error to enter a decree in equity ordering performance of a promise

to pay, upon demand, a certain sum for a deed of real estate, where no refusal to comply with such a demand was shown.

A conclusion by a master upon unreported evidence, not based solely on his subsidiary findings nor inconsistent therewith, that the prospective purchaser under an alleged "verbal" agreement for the sale of stock was entitled to a transfer thereof by the seller, required a decree accordingly, although the seller pleaded the statute of frauds, G. L. (Ter. Ed.) c. 106, § 6 (1).

A decree in equity granting relief as to matters respecting which there were no specific prayers for relief nor findings made, and as to matters respecting which there were prayers but no findings supporting the relief granted, was erroneous.

BILL IN EQUITY, filed in the Superior Court on May 31, 1940, against William J. Kosciak, referred to as the defendant in the opinion.

Stella Ciborowski and Worcester Insurance Agency, Inc., were subsequently joined as parties, as described in the opinion. The plaintiff and Stella Ciborowski appealed from a final decree entered by order of *Broadhurst*, J.

The case was submitted on briefs.

*G. R. Stobbs & L. E. Stockwell*, for the plaintiff.

*C. N. Dewey & G. H. Mason*, for the defendant Kosciak.

Cox, J. The plaintiff's bill alleges, in substance, that the deed of a parcel of real estate in Worcester was taken in the names of the parties as tenants in common, with the agreement that the conveyance to the defendant, although absolute in form, was as collateral security and was intended by the parties as an equitable mortgage; that the deed was security for the promise of the plaintiff to pay a note of the defendant for $1,500, and also to pay him $1,500; that the plaintiff paid the note, paid the defendant $1,000 and tendered him the further sum of $500 which he had refused to accept. There was a prayer that the defendant be required to execute and deliver a deed of his interest in the real estate to the plaintiff.

The defendant set up in his answer counterclaims against the plaintiff, the plaintiff's wife and a corporation. (Rule 32 of the Superior Court [1932].) The new parties answered to the counterclaims, but before they had done so, the suit was referred to a master. The allegations in the counterclaims will be dealt with later.

The evidence is not reported, and it does not appear from the master's report that his ultimate findings of fact are based solely upon the subsidiary facts that he found. The subsidiary facts found are not inconsistent with the ultimate findings. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. The only question open on the appeal of the plaintiff from the final decree, there having been no appeal from the interlocutory decree confirming the report, and the final decree not being adversely affected by the interlocutory decree, is whether the final decree is within the scope of the bill and counterclaim and supported by the facts found by the master. *Springfield Safe Deposit & Trust Co.* v. *Friele*, 304 Mass. 224, 226.

1. The master found, with reference to the allegations in the plaintiff's bill, that the parties agreed to purchase the real estate as joint owners and that the deed was taken in their names as tenants in common; that the transaction did not amount to an equitable mortgage; that the defendant agreed orally that he would convey his interest to the plaintiff for $3,000; that he received $1,000 in cash and, as a part of the transaction, the defendant's note for $1,500, upon which the plaintiff was an accommodation indorser, was surrendered and cancelled by the substitution of the plaintiff's note; that the plaintiff tendered the $500 "due to the defendant," but that the latter refused to execute the deed unless other matters, to which reference is hereinafter made, were "straightened out." By the terms of paragraph 1 of the final decree, the plaintiff is ordered to pay the defendant $500 and to deliver to him the note for $1,500 (that was cancelled) upon tender by the defendant to him of a quitclaim deed of his interest in the premises in question. There are further provisions that the defendant, upon such conveyance, shall be under no further obligations to the plaintiff with reference to said real estate.

It is an elementary rule that relief in equity is limited by the allegations contained in the bill. *Seder* v. *Kozlowski*, 304 Mass. 367, 369. That part of the decree now under consideration grants affirmative relief to the defendant. The defendant answered the plaintiff's bill. The statute of

frauds is not pleaded. The defendant makes no claim for affirmative relief in his counterclaim with reference to the transaction now under consideration. It is true that in his answer he refers to the transactions that are the basis of his counterclaim. In the circumstances, the defendant is not entitled to the affirmative relief granted. *Westfield Savings Bank* v. *Leahey*, 291 Mass. 473, 476. The master found that the agreements relative to the sale of the real estate in question and those set out in the counterclaim were separate and independent transactions. It is to be observed that by the terms of the first paragraph of the decree the obligations to pay $500 and to deliver the promissory note are imposed upon the plaintiff, provided the defendant tenders a deed. Nothing is said as to what shall happen if the tender is not made, although it appears that the plaintiff has already paid the defendant $1,000, has procured the cancellation of the defendant's note for $1,500, and has tendered $500, the balance remaining due. It is true that the master found there was no equitable mortgage. But where, as here, it appears that the issues upon which a final decree is based have been fully heard, and where, upon the facts found, the plaintiff is entitled to relief, he should be allowed to amend his bill by alleging the liability of the defendant as found. Accordingly, the Superior Court may allow the plaintiff so to amend his bill within thirty days after rescript, *Seder* v. *Kozlowski*, 304 Mass. 367, 370, and thereupon, as a part of the final decree, the defendant, upon payment to him of $500, is to be ordered to execute and deliver to the plaintiff a good and sufficient quitclaim deed of all his right, title and interest in the real estate in question. If no such amendment is allowed, the bill is to be dismissed. There is no finding of the master that the plaintiff has the $1,500 note of the defendant that was cancelled, and it was error to order the plaintiff to deliver it to the defendant.

2. One allegation of the defendant's counterclaim is, in substance, that he and the plaintiff own a farm as tenants in common, title to which was taken with the agreement of the plaintiff that, at any time the defendant should so

request, he would pay him a specified sum, together with one half of any expenditures made by the parties on account of the farm, in exchange for the defendant's deed of his interest therein; that the defendant had requested an accounting with the plaintiff in regard to this real estate and had offered to give him a deed of all his interest therein in exchange for payment to him of the amount found due upon the accounting, but that although the plaintiff had agreed to do this, he had since refused. The master found that the plaintiff did agree to purchase the defendant's interest in the farm at any time he should request it, and that "such a request was made." He also found that the amount the defendant "put in" was $746.22, obviously more than one half of the equity, inasmuch as the purchase price of the farm was $5,450 and the parties executed a purchase money mortgage for $4,085. If we assume that, as incidental to the defendant's counterclaim for specific performance, it was necessary to ascertain what the defendant "put in," as has been done, it becomes necessary to determine whether the decree, in ordering the plaintiff to pay the sum found due, upon tender of a deed, was warranted.

The plaintiff contends that there is no finding that the defendant offered to perform his part of the agreement or that he was ready, able and willing to do so, or that the plaintiff refused to perform his part. We think it follows from the finding that the defendant requested the plaintiff to carry out the agreement, that he not only demanded performance, but that he also was ready and willing to perform. These conclusions are also borne out by the finding of the master that the defendant refused to execute a deed of the real estate in Worcester "unless the . . . [farm] and the insurance business should also be straightened out." We are also inclined to the opinion that the master's findings warrant the conclusion that the defendant was able to give a deed of his interest in the farm. Compare *Strumskis* v. *Tilenas*, 268 Mass. 550.

In a transaction of this character, the conditions are concurrent and mutually dependent. *Hunt* v. *Bassett*, 269 Mass.

298, 302. The difficulty in the case at bar, however, arises over the question whether there is any finding, express or implied, that the plaintiff ever refused to comply with the defendant's request. When the transaction with reference to the Worcester real estate had reached the point where nothing was left to be done except for the plaintiff to pay the defendant $500 in return for the defendant's deed, the defendant refused to execute the deed on the grounds already stated. Nothing more appears in the master's report beyond the statement that, after a long conference and an attempt to straighten out their difficulties, the parties left the attorney's office. What went on at this conference does not appear. For all that does appear, the plaintiff may have agreed to pay the defendant the amount due in relation to the farm. It may be that the difficulty over the transfer of the stock of the corporation, hereinafter referred to, was the only matter that could not be "straightened out." It is to be observed that although the master found categorically that the defendant refused to execute a deed of the Worcester real estate, there is no finding that the plaintiff refused to comply with the defendant's request that was made with reference to the farm transaction. The defendant is not helped in this respect by the state of the pleadings.

The answer to the counterclaim is entitled: "Answer of the Defendants, Worcester Insurance Agency, Inc. and Stella Ciborowski, to Defendant's Counterclaim." Each paragraph of the answer, except 7, 13 and 18, begins with the words "These defendants." So much of the answer as relates to the allegations of the counterclaim relative to the farm transaction is that "These defendants have no interest with any of the allegations contained in this paragraph." Paragraphs 7 and 13, however, purport to be the answer of the plaintiff and his wife. Therein they admit the oral agreement to convey the stock of the corporation, but plead the statute of frauds, and say that they are willing to cause to be transferred to the defendant the additional two hundred shares of stock upon payment of the amount agreed upon. The answer is signed merely by the attorneys. By the rules of the Superior Court, a counter-

claim requires an answer, and for failure to answer it may be taken for confessed on motion. It does not appear, however, that in the case at bar there was any motion pro confesso, an entry of such a decree, or any objection to the answer. As already appears, the case was referred to the master before any answer to the counterclaim was filed. After his report was filed, the plaintiff asked leave to file an answer to the counterclaim in which, among other things, he sought to plead the statute of frauds relative to the farm transaction. This motion was denied. Assuming that the answer to the counterclaim is, in part, the answer of the plaintiff, it is incomplete and imperfect, but no one seems to have objected. The point was not taken at the argument before this court. In the circumstances, it must be taken that any insufficiency in the answer was waived by the defendant, and we must consider the case as if there had been a proper joinder of the issues presented by the counterclaim. *Bartholomew* v. *Waldorf System Inc.* 291 Mass. 357, 358–359, and cases cited. See *Assessors of Boston* v. *Suffolk Law School*, 295 Mass. 489, 498.

Inasmuch as the defendant has failed to establish any refusal of the plaintiff to perform his agreement relative to the farm, see *Grant* v. *Pizzano*, 264 Mass. 475, 480, and cases cited, there was error in including paragraph 2 in the decree.

3. Another allegation in the defendant's counterclaim is, in substance, that the plaintiff agreed[1] that he would sell, or cause to be sold, to the defendant the three hundred shares of the common stock of Worcester Insurance Agency, Inc. (the corporation that appeared as a party), and the master found that the defendant, having exercised his right to purchase under this agreement, is entitled to the transfer of the remaining one hundred shares of stock held by the plaintiff upon payment to him of $750, it having been found that one hundred shares of the stock that were held by the plaintiff's wife had already been transferred to the defendant upon payment to her of $200, and that one hun-

---

[1] The allegation in the counterclaim was that "the plaintiff entered into a verbal agreement" to the effect described. — REPORTER.

dred shares, indorsed to the defendant's sister, apparently at his request, had been delivered to him. Although the master found that the certificate for the one hundred shares of stock of the plaintiff's wife was delivered to the defendant, he also found that at some time the plaintiff had given this certificate to his wife for safe keeping. Both the plaintiff and his wife appealed from the final decree that ordered the plaintiff to transfer and deliver the one hundred shares of stock standing in his name to the defendant upon tender by the latter to the plaintiff of $750, and also ordered the plaintiff's wife to deliver to the defendant the certificate for the one hundred shares that she had indorsed to him. She makes no contention as to this order. The plaintiff contends, however, that there was no finding that the defendant was ready, willing and able to carry out his part of the agreement, or that the plaintiff refused to do his part. The short answer to this contention is that the master found, upon unreported evidence, that the defendant was entitled to the transfer of the shares, and this finding must stand, supported as it is by the subsidiary findings, and this is so although the plaintiff and his wife pleaded the statute of frauds as a defence. G. L. (Ter. Ed.) c. 106, § 6 (1).

4. The sixth paragraph of the decree ordered the plaintiff and his wife to account to the defendant for all operations of the business of Worcester Insurance Agency, Inc., from June 5, 1940, to the date of the decree. The defendant contends that this order is warranted on the basis of a stipulation filed by the parties after the commencement of the suit. This stipulation is not printed in the record, although it does appear in the copies submitted by the county clerk of courts. Just why this paragraph is incorporated in the decree does not appear. The defendant, in his counterclaim, did not ask specifically for any such relief. He did ask that his damages be assessed because of the plaintiff's wrongful seizure of the books and assets of the corporation and the wrongful refusal of the plaintiff to allow the defendant to continue his duties with the corporation. It is true that in his counterclaim he alleged that

the plaintiff and his wife had unlawfully received moneys belonging to the corporation and had unlawfully proceeded to conduct the business. The master made no findings as to these matters except that after the plaintiff and defendant had apparently come to an impasse, a meeting of the stockholders of the corporation was held, at which the plaintiff and his wife were present; that at this meeting new officers were purported to be elected to the offices formerly held by the defendant; and that this meeting was not legally held and its proceedings were invalid. The plaintiff's wife was not a party to any of the agreements between the plaintiff and defendant. If she or the plaintiff has misappropriated any of the corporate assets, it would seem that the corporation was the party to proceed against them rather than the defendant, who is merely a stockholder. If the stipulation is considered, it does not appear that there has been any violation of its terms. Paragraph 6 of the decree should be omitted. See *Chopelas* v. *Chopelas*, 294 Mass. 327, 333, 334–335. *Milbank* v. *J. C. Littlefield, Inc.*, *ante*, 55, 61.

5. By the eighth paragraph of the decree, the plaintiff and his wife are perpetually enjoined, in effect, from taking away, or attempting to take away, any of the business of the corporation and from interfering in any manner with its conduct, and by the ninth paragraph, the plaintiff is enjoined from engaging in any insurance business in the city of Worcester which competes with the business of the corporation. The plaintiff makes no contention as to the terms of paragraph 8, but his wife contends that she ought not to be so enjoined, and, for reasons already stated, we are of opinion that her contention must be sustained. The defendant's counterclaim was amended by alleging that the plaintiff agreed that, upon consummation of the purchase of the stock, he would not thereafter interfere with the good will of the corporation, nor engage in the insurance business in the city and county of Worcester. There is no finding of the master as to this allegation. He finds the terms of the agreement in the earlier part of his report. In his summary of findings he states that there was a

"definite agreement" between the plaintiff and the defendant relative to the purchase of the stock "as set forth" earlier. At the outset he finds that the plaintiff and the defendant had discussions relative to the "sale of the insurance company to the defendant which both understood was to be accomplished by the transfer of the total outstanding stock." As early as December 8, 1937, the plaintiff caused to be transferred to the defendant the shares of stock held by the plaintiff's wife by payment to her of $200. On that date the defendant was elected a director and treasurer of the corporation, and later on he was "named" as clerk. But nowhere is there any finding that the plaintiff agreed that he would not engage in a competing insurance business or that he would not interfere with the good will of the corporation. The defendant alleged in his counterclaim that the plaintiff was the legal and beneficial owner of one hundred shares and beneficial owner of the two hundred shares of stock that stood in the names of his wife and his attorney. There is no finding that he was the beneficial owner of this stock. On the contrary and as opposed to the possibility of such a finding, is the categorical finding, hereinbefore referred to, of the payment to the plaintiff's wife of $200 for her stock. Furthermore, there is no finding that the corporation is the plaintiff in another form, see *Marshall Engine Co.* v. *New Marshall Engine Co.* 203 Mass. 410, 420, nor do we think that the subsidiary findings warrant any such conclusion. Accordingly, we are of opinion that the ninth paragraph of the decree, hereinbefore referred to, was not warranted.

The counterclaim should be dismissed as to the corporation with costs.

The decree as modified in accordance with this opinion is affirmed.

*Ordered accordingly.*